UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joel W.,

      Plaintiff,

v.

Andrew Saul, Commissioner of Social Security,

      Defendant.

File No. 19-cv-3193 (ECT/ECW)

**OPINION AND ORDER**

James H. Greeman, Greeman Toomey, Minneapolis, MN, for Plaintiff Joel W.

Linda H. Green, Social Security Administration, Office of the General Counsel, Dallas, TX, for Defendant Andrew Saul.

Plaintiff Joel W. appealed the Commissioner of Social Security's denial of his application for disability insurance benefits. *See* Compl. [ECF No. 1]. The Parties filed cross-motions for summary judgment. ECF Nos. 12, 14. In a Report and Recommendation ("R&R"), Magistrate Judge Elizabeth Cowan Wright recommended denying Joel W.'s motion and granting the Commissioner's motion. R&R at 25 [ECF No. 18]. Joel W. filed objections to the R&R, ECF No. 19, and the Commissioner has not filed a response. "[T]hose portions" of the R&R to which Joel W. objected will be reviewed de novo. 28 U.S.C. § 636(b)(1)(C); *accord* L.R. 72.2(b)(3). All other portions will be reviewed for clear error. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Based on that review, the R&R will be accepted.

I

Joel W. claims that he has been disabled since November 11, 2016. R. 11, 103.[1,2] Relevant here, the administrative law judge ("ALJ") found that Joel W. suffers from the "severe impairment" of "vestibular Meniere's disease," R. at 14, which is a disorder "characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00(C)(2). Nonetheless, the ALJ determined that Joel W. "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in" Appendix 1. R. at 15–16. Specifically, the ALJ considered whether Joel W. satisfied the criteria of Listing 2.07, which requires:

> *Disturbance of labyrinthine-vestibular function (including Ménière's disease)*, characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
>
> B. Hearing loss established by audiometry.

---

[1] This order's citations to the Administrative Record ("R."), *see* ECF No. 10, will refer to the system of consecutive pagination that spans the exhibits. The relevant page numbers are listed in the bottom right corner of each document.

[2] Joel W. previously applied for and received benefits for the period from August 16, 2014, through November 1, 2015. R. at 74, 83–84. Joel W. also stated in his brief that he filed a new claim for benefits in December 2019 that was approved in February 2020, but there is no evidence in the record concerning that application. Pl.'s Mem. in Supp. at 2, 11 [ECF No. 13]. The relevant period for this case is November 11, 2016, the alleged disability onset date, through April 30, 2019, the date of the administrative law judge's decision. *See* R. at 25.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07.  According to the ALJ, Joel W. did not meet Listing 2.07's requirements because "the evidence d[id] not establish progressive loss of hearing."  R. at 15.  Instead, the record showed that Joel W.'s hearing was either "within" or "very close to" a normal range throughout the period of alleged disability.  *Id.*  Having found that Listing 2.07 did not apply, the ALJ then determined that Joel W. was not disabled because he retained the residual functional capacity to work with restrictions in jobs that exist in significant numbers in the national economy.  R. at 16–25.  The Social Security Appeals Council declined to review the ALJ's decision, and the ALJ's decision accordingly became the final decision of the Commissioner.  R. at 1; *see* 20 C.F.R. § 404.981.

Joel W. then filed this action to challenge the denial of benefits, and the Parties filed cross-motions for summary judgment.  ECF Nos. 12, 14.  Joel W. raised two arguments to support his motion.  First, he argued that substantial evidence did not support the ALJ's finding that his impairment did not medically equal Listing 2.07 because the record showed that he suffered from at least "mild hearing loss."  Pl.'s Mem. in Supp. at 8–11.  Second, he argued that the ALJ erred by making her decision without first seeking the advice of a medical expert.  *Id.* at 11–12.  The Commissioner argued that he was entitled to summary judgment because the ALJ's decision was "legally sound and supported by substantial evidence."  Def.'s Mem. in Supp. at 16 [ECF No. 16].

Magistrate Judge Wright rejected both of Joel W.'s arguments in the R&R.  First, she concluded that Listing 2.07 required Joel W. to show both "progressive loss of hearing" and "hearing loss established by audiometry" and that Joel W.'s argument did not

3

adequately account for these separate requirements. R&R at 14–18. Next, she determined that substantial evidence supported the ALJ's finding that Joel W. had not shown "progressive" hearing loss. *Id.* at 18–21. Finally, she concluded that the ALJ was not required to solicit a medical expert's opinion before deciding that Joel W.'s impairment did not medically equal Listing 2.07. *Id.* at 21–25.

II

In his objections to the R&R, Joel W. renews his argument that evidence of mild hearing loss satisfies Listing 2.07's requirement of "progressive loss of hearing." Pl.'s Objs. at 1–3. This argument implicates two separate questions: (1) what Listing 2.07 requires, and (2) whether the ALJ could reasonably conclude that Joel W.'s impairment did not meet those requirements.

A

Magistrate Judge Wright correctly interpreted Listing 2.07 to require both that a claimant's hearing loss be "established by audiometry" and that it be "progressive." First, the text and structure of the Listing and surrounding regulations support this interpretation. The Listing provides for per se disability when a claimant experiences a certain type of "[d]isturbance of labyrinthine-vestibular function . . . *[w]ith*" the supporting test results described in paragraphs A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07 (emphasis added); *see Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (explaining that a claimant whose impairment medically equals a listing is "automatically found disabled and is entitled to benefits"). The word "with" suggests that paragraphs A and B supplement the material in the Listing's introductory paragraph rather than define the Listing's

4

exclusive requirements. *See With*, Am. Heritage Dictionary of the Eng. Language, https://www.ahdictionary.com/word/search.html?q=with (last visited Feb. 26, 2021) (defining "with" as "[i]n the company of" or "accompanying"). In other words, the Listing's introductory paragraph outlines the nature of the symptoms a claimant must exhibit, and paragraphs A and B describe the tests a claimant must undergo to demonstrate those symptoms. Moreover, a regulation describing the structure of Appendix 1 says that a claimant must satisfy "all of the criteria" for the listing at issue, "including any relevant criteria in the introduction" that precedes the specific listings for each body system. 20 C.F.R. § 404.1525(c)(3). In view of that regulation, which requires an ALJ to consider generalized requirements that appear multiple paragraphs before a specific listing when deciding whether the listing is met, it would make little sense to disregard Listing 2.07's introductory paragraph. *See generally id.* Pt. 404, Subpt. P, App. 1, §§ 2.00(B), (C), 2.07. Finally, as Magistrate Judge Wright observed, concluding that any evidence of hearing loss automatically satisfies Listing 2.07's hearing-loss requirements would render the word "progressive" superfluous—a result courts try to avoid. R&R at 16 (citing *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009)).

      Second, case law is on the Commissioner's side. Although the Eighth Circuit has not considered whether Listing 2.07 requires a claimant's hearing loss to be "progressive," other federal courts have consistently held that it does. *See, e.g.*, *James W. v Saul*, No. 1:20-cv-00013-DAO, 2021 WL 673264, at *3 (D. Utah Feb. 22, 2021); *Gendron v. Berryhill*, No. 3:17 CV 207 (JGM), 2018 WL 774903, at *11–12 (D. Conn. Feb. 8, 2018); *Idalski v. Comm'r of Soc. Sec.*, No. 16-11560, 2017 WL 4158793, at *2 (E.D. Mich. Aug.

24, 2017); *Bristol v. Colvin*, No. 2:15-cv-21, 2016 WL 3166514, at *8 (D. Vt. June 6, 2016); *see also Lately v. Colvin*, 560 F. App'x 752, 753 n.1 (10th Cir. 2014); *cf. Stadterman v. Berryhill*, Civ. No. 18-20, 2019 WL 1359473, at *3–4 (W.D. Pa. Mar. 26, 2019) (concluding that hearing loss must be progressive but remanding because the ALJ made contradictory findings). Joel W. relies primarily on *Pratt v. Astrue*, in which a district court reversed a denial of benefits because the ALJ had not adequately explained why the claimant did not meet Listing 2.07. No. C07-950Z, slip op. at 5–6 (W.D. Wash. July 24, 2008). The court in *Pratt* wrote that "[t]he requirement that the hearing loss be progressive is not firmly established by the listing" and that Appendix 1 is "somewhat self contradictory" because, in one portion, it states that Ménière's disease generally involves "fluctuating" hearing loss, but in another, it requires "progressive" hearing loss. *Id.* at 6; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.00(C)(2), 2.07. This limited analysis is not persuasive enough to overcome the textual arguments and case law that point the other way. Indeed, it seems reasonable to imagine that hearing loss could be both "fluctuating"—*i.e.*, "vary[ing] irregularly"—and "progressive"—*i.e.*, "[t]ending to become more severe." *Fluctuate*, Am. Heritage Dictionary of the Eng. Language, https://www.ahdictionary.com/word/search.html?q=fluctuate (last visited Feb. 26, 2021); *Progressive*, Am. Heritage Dictionary of the Eng. Language,

6

https://www.ahdictionary.com/word/search.html?q=progressive (last visited Feb. 26, 2021).[3]

Third, Magistrate Judge Wright's interpretation makes sense in view of Listing 2.07's place in the regulatory scheme. The listings in Appendix 1 are essentially designed to put obvious cases on a fast track. "[I]f an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also* 20 C.F.R. § 404.1520(d). For that reason, the listings are defined "at a higher level of severity than the statutory [disability] standard," *Sullivan*, 493 U.S. at 532, describing impairments that are "severe enough to prevent an individual from doing *any* gainful activity," 20 C.F.R. § 404.1525(a) (emphasis added), and not just "substantial gainful activity," 42 U.S.C. § 423(d)(1)(A). With that context, it would make little sense to ignore Listing 2.07's introductory paragraph. Paragraphs A and B of Listing 2.07 describe the objective symptoms covered by the Listing without regard to the degree or severity of those symptoms. The introductory paragraph specifies the level of severity necessary to qualify for automatic disability. In short, Joel W. may be correct that Listing 2.07 does not require a "specific level of hearing loss," Pl.'s Mem. in Supp. at 10, but it does require that a claimant's hearing loss be progressive.

---

[3] Because Appendix 1 and surrounding regulations do not define "progressive" or "fluctuating," it is appropriate to give those terms their ordinary meaning. *See McChesney v. Fed. Election Comm'n*, 900 F.3d 578, 585–86 (8th Cir. 2018).

B

The next question is whether substantial evidence supports the ALJ's finding that Joel W. had not shown progressive hearing loss. "Substantial evidence" means evidence "that a reasonable mind would find . . . adequate to support the Commissioner's conclusions." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citation omitted).

Magistrate Judge Wright correctly concluded that substantial evidence supports the ALJ's finding. Joel W. points to results from a number of hearing tests conducted during the period of alleged disability that show right ear conduction thresholds between 25 and 40 dB, R. at 304, 603–08, and he cites to sources indicating that these results show "mild" hearing loss under accepted standards, Pl.'s Mem. in Supp. at 8. On the same days that he received these results, however, Dr. Michael Paparella—Joel W.'s treating physician—characterized Joel W.'s hearing as "holding up at a normal level," R. at 302, 596; either "[v]ery close to" or "within a normal range," *id.* at 597; "basically normal," *id.* at 598; and "look[ing] to be as good as it was previously," *id.* The ALJ was entitled to consider Dr. Paparella's characterizations even though they came from "outside of the test setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00(B)(1)(a) (describing the Commissioner's approach to evaluating hearing loss); *see Kraus v. Saul*, __ F.3d __, No. 19-3337, 2021 WL 641375, at *4 (8th Cir. Feb. 19, 2021) (stating the general rule that treating physicians' opinions deserve greater weight than the opinions of outside consultants). Moreover, tests conducted before the alleged disability onset date showed some of the same air conduction thresholds. *See* R. at 305–07. At those times, too, Dr. Paparella described Joel W.'s

8

hearing as "normal." *Id.* at 299. Faced with this evidence, the ALJ could reasonably find that Joel W.'s hearing loss was not "[t]ending to become more severe." *Progressive*, Am. Heritage Dictionary of the Eng. Language, *supra*; *see, e.g.*, *Bristol*, 2016 WL 3166514, at *8 (upholding an ALJ's finding that Listing 2.07's requirement of "progressive" hearing loss was not met even though the record showed "mild hearing loss"); *Gendron*, 2018 WL 774903, at *11–12 (same).

### III

Although Joel W. argues in his objections that the case should be remanded "for the reasons stated in his initial brief," Pls. Objs. at 3, he does not challenge Magistrate Judge Wright's conclusion that it was unnecessary for the ALJ to solicit the opinion of a medical expert. That conclusion will therefore be reviewed for clear error. *See Grinder*, 73 F.3d at 795. In his initial brief, Joel W. argued that a medical expert's opinion was necessary because no expert had ever opined on audiometry testing he underwent in the summer and fall of 2018. *See* Pl.'s Mem. in Supp. at 11. For support, he cited Social Security Ruling 17-2p, which provides that Social Security adjudicators "may ask for and consider evidence from medical experts" when deciding whether a claimant's impairment medically equals a listed impairment. 2017 WL 3928306, at *3 (Mar. 27, 2017). As Magistrate Judge Wright observed, however, the same ruling says that adjudicators need not solicit an expert opinion if they believe that "the evidence does not reasonably support a finding" that the claimant's impairment medically equals a listed impairment. *Id.* at *4. As discussed above, Joel W.'s test results from the summer and fall of 2018 did not significantly differ from his earlier test results. *Compare* R. at 603–08, *with id.* at 304–07. Under these circumstances, it was

9

not clear error to conclude that the ALJ could decide the case without an updated expert opinion. *See Bristol*, 2016 WL 3166514, at *9 n.4.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED** that:

1. Plaintiff's Objections to the Report and Recommendation [ECF No. 19] are **OVERRULED**;

2. The Report and Recommendation [ECF No. 18] is **ACCEPTED**;

3. Plaintiff's Motion for Summary Judgment [ECF No. 12] is **DENIED**;

4. Defendant's Motion for Summary Judgment [ECF No. 14] is **GRANTED**;

5. The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 26, 2021          s/ Eric C. Tostrud
                                  Eric C. Tostrud
                                  United States District Court